1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   LARRY EDWARDS,

11            Plaintiff,              No. CIV S-06-1595 MCE DAD P

12       vs.

13   C/O HOOK, et al.,               FINDINGS AND RECOMMENDATIONS

14            Defendants.

15   _____/

16            Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action

17   filed pursuant to 42 U.S.C. § 1983.  On January 3, 2007, defendants Freese, Young, and

18   Shockley filed a motion to dismiss the complaint pursuant to unenumerated Rule 12(b) of the

19   Federal Rules of Civil Procedure on the ground that plaintiff failed to exhaust available

20   administrative remedies prior to bringing this action.[1]  Plaintiff has filed a timely opposition.

21   Defendants have not filed a reply.

22                          **PLAINTIFF'S CLAIMS**

23            Plaintiff alleges that on August 18, 2005, he returned from the work exchange

24   station at CSP-Solano and proceeded through a metal detector at which time defendant Hook

25   _____

26        [1]Defendants Herrera, Hook, and Kirkland have also been served with plaintiff's
     complaint.  However, they have not joined in the pending motion to dismiss.

took plaintiff's brace, medical sleeve and glove and asked plaintiff why he had them.  (Compl.,
Ex. A.)  Plaintiff told Hook that he wears the glove for medical reasons when it is cool outside in
the morning.  (Compl., Ex. A.)  Defendant Hook then held out the sleeve in plaintiff's direction
and when plaintiff reached for it told plaintiff not to ever try to take anything from him.  (Compl.,
Ex. A.)  Plaintiff alleges that defendant Hook then took plaintiff's belongings and threw them on
to the concrete.  Plaintiff told Hook that he had just broken his brace.  Defendant Hook
responded by saying something to the effect that the brace wasn't all he would break.  Plaintiff
alleges that defendant Hook then directed racial slurs at him, calling plaintiff "Boy."  (Compl.,
Ex. A.)  Defendant Hook also told plaintiff that he might keep his brace and take it to get
checked out by medical staff.

According to plaintiff, defendant Hook then called Sergeant Kirkland who took
Hook's side in the dispute and threatened plaintiff with a rules violation if he reported the
incident.  Defendant Kirkland also said he would personally attend the rules violation hearing
and make sure that plaintiff was found guilty and that his gate pass was revoked permanently.
(Compl., Ex. A.)  Plaintiff alleges that defendant Kirkland then called defendant Herrera who
went to plaintiff's cell, destroyed property belonging to plaintiff and walked on plaintiff's
bedspread and sheets while wearing boots.  (Compl., Ex. A.)

Plaintiff alleges that after defendants Hook and Kirkland left, Correctional Officer
Whitfield came over and asked to see the brace.  She told plaintiff that she could act as a witness
to the incident.  (Compl., Ex. A.)

Plaintiff submitted a grievance regarding the conduct of defendants Hook,
Kirkland, and Herrera and requested, among other things, that the Department of Corrections and
defendant Hook pay to fix his brace and his eye glasses.  (Compl., Ex. A.)  The Appeals Office
granted plaintiff's appeal in part at the first and second formal levels of review.  (Compl., Ex. E.)
The Inmate Appeals Branch denied plaintiff's appeal at the director's level.  (Compl., Ex. E.)
Plaintiff alleges that defendants Freese, Young, and Shockley failed to conduct a thorough

1    investigation of the incident during the inmate appeals process and/or engaged in a cover-up of

2    the wrongdoing by defendants Hook, Kirkland, and Herrera.  (Compl. at 4.)

**DEFENDANTS' MOTION TO DISMISS**

4    I.  Defendants' Motion

5            Defendants argue that plaintiff failed to exhaust his available administrative

6    remedies with respect to his claims against defendants Young, Freese, and Shockley prior to

7    filing this action and, therefore, their motion to dismiss should be granted.  (Defs.' Mot. to

8    Dismiss at 3.)  In support of their motion defendants have submitted declarations by M. Corioso,

9    an Appeals Coordinator at CSP-Solano and N. Grannis, Chief of Inmate Appeals at the

10   California Department of Corrections and Rehabilitation.

11           Defendants acknowledge that plaintiff filed grievance CSP-S-05-02416, naming

12   defendants Hook, Kirkland, and Herrera and describing their alleged conduct during the incident

13   that lies at the heart of this action.  However, defendants argue that plaintiff failed to file any

14   grievances regarding the alleged cover-up by defendants Young, Freese, and Shockley.  (Defs.'

15   Mot. to Dismiss at 3; Corioso Decl. at 2; Grannis Decl. at 3.)  Although defendants Young,

16   Freese, and Shockley's alleged conduct may have arisen out of the incident involving defendants

17   Hook, Kirkland, and Herrera about which plaintiff did file a grievance, defendants maintain that

18   plaintiff was required to file a grievance addressing his allegations of a cover-up.  In this regard,

19   defendants argue that prison officials must be afforded the opportunity to investigate a plaintiff's

20   claims prior to him filing suit. (Defs.' Mot. to Dismiss at 6.)  Defendants conclude that plaintiff

21   failed to exhaust his administrative remedies as to his claims against defendants Young, Freese,

22   and Shockley and that the court should grant their motion to dismiss.

23   II.  Plaintiff's Opposition

24           Plaintiff has filed a brief opposition to the pending motion to dismiss, arguing that

25   it should be denied.  First, plaintiff asserts that "[n]o useful purpose would be served by forcing

26   Plaintiff to retreat to square one, and make his way a [sic] through the administrative maze."

1   (Pl.'s Opp'n to Defs.' Mot. to Dismiss at 1.)  Second, plaintiff argues that "[i]n a suit under 42

2   U.S.C. 1983, which gives a right under color of law, an inmate is entitled to an opportunity to

3   offer proof under his pro se allegations." (Id.)  Finally, plaintiff concludes "[t]hat if it pleases the

4   court, Plaintiff ask[s] this court to hold his complaint in abeyance against defendants Freese,

5   Young, and Shockley, and allow Plaintiff to exhaust any unexhausted claims in the interest of

6   justice." (Id.)

7   III.  Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

8           By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42

9   U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions

10   under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

11   prison, or other correctional facility until such administrative remedies as are available are

12   exhausted." 42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about

13   prison life, whether they involve general circumstances or particular episodes, and whether they

14   allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

15           The Supreme Court has ruled that exhaustion of prison administrative procedures

16   is mandated regardless of the relief offered through such procedures. Booth v. Churner, 532 U.S.

17   731, 741 (2001).  The Court has also cautioned against reading futility or other exceptions into

18   the statutory exhaustion requirement. Id. at 741 n.6.  Because proper exhaustion is necessary, a

19   prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise

20   procedurally defective administrative grievance or appeal. Woodford v. Ngo, __ U.S. __, 126 S.

21   Ct. 2378, 2382 (2006).

22           In California, prisoners may appeal "any departmental decision, action, condition,

23   or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code

24   Regs. tit. 15, § 3084.1(a).  Most appeals progress from an informal review through three formal

25   levels of review. See Cal. Code Regs. tit. 15, § 3084.5.  A decision at the third formal level, also

26   referred to as the director's level, is not appealable and will conclude a prisoner's administrative

1    remedy.  Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2).  A California prisoner is

2    required to submit an inmate appeal at the appropriate level and proceed to the highest level of

3    review available before filing suit.  Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005);

4    Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

5            The PLRA exhaustion requirement is not jurisdictional but rather creates an

6    affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion.  Jones v.

7    Bock, __U.S. __, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or

8    demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 & nn.9

9    & 13 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003).  The defendant

10   bears the burden of raising and proving the absence of exhaustion.  Wyatt , 315 F.3d at 1119.  "In

11   deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look

12   beyond the pleadings and decide disputed issues of fact."  Id. at 1119-20.  "I[f] the district court

13   looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to

14   exhaust–a procedure closely analogous to summary judgment–then the court must assure that

15   [the prisoner] has fair notice of his opportunity to develop a record."[2]  Id. at 1120 n.14.  When

16   the district court concludes that the prisoner has not exhausted administrative remedies on a

17   claim, "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.  See also

18   Lira v. Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied ___U.S.___, 127 S. Ct. 1212

19   (2007).  On the other hand, "if a complaint contains both good and bad claims, the court proceeds

20   with the good and leaves the bad."  Jones, 127 S. Ct. at 924.

21   IV.  Discussion

22           In the present case, the court finds that plaintiff exhausted his administrative

23   remedies with respect to his claims against defendants Freese, Young, and Shockley.  Contrary to

24   defendants' arguments, plaintiff's grievance provided prison authorities with sufficient notice

25

26       [2]  Plaintiff was notified of the requirements for opposing a motion to dismiss brought
     pursuant to non-enumerated Rule 12(b) on November 2, 2006.  (Order filed Nov. 2, 2006 at 3-4.)

and ample time to address his claim about defendants' alleged cover-up.  In particular, in

plaintiff's second level appeal, he expressed concerns about defendants' handling of the

investigation.  Plaintiff wrote:

> YOU HAVE NOT CONDUCTED A THOROUGH
> INVESTIGATION AS YOU HAVE MENTION, LT. YOUNG
> NOR T. SHOCKLEY HAS INTERVIEWED THE WITNESS I
> NAMED TO LT. YOUNG.  C/O WITFIELD WAS NOT
> INTERVIEWED NOR WAS THE FOLLOWING INMATES,
> INMATE BRYANT, H-10612, 14-S-5-U, INMATE BROWN, K-
> 61303, 20-F-4-L, AND INMATE VAZQUEZ, T59806, 15-P-3-L.

(Compl., Ex. A.)  In response, appeal administrators addressed plaintiff's claim at length and in

the "DISCUSSION" section, the appeal administrator wrote:

> You state that a thorough investigation was not completed as staff
> witness Officer Whitfield was not interview [sic].  You also claim
> that Lieutenant Young failed to interview three inmate witnesses
> you state that you provided her the names of.

(Compl., Ex. E.)  Then, in the "DECISION" section, the appeal administrator stated:

> A review of the fact-finding reflects that Lieutenant Young
> interviewed Sergeant Kirkland, Officer Hook, Officer Herrera,
> Officer Whitfield and Officer Karlson.  All involved staff denied
> your allegations.  The review also revealed that Lieutenant Young
> documented that you were unable to provide any inmate witnesses
> to your allegations.  Lieutenant Young documented that Building
> #15 Housing Officer Karlson stated that you returned from the
> appeal interview angry at her (Lieutenant Young) as she had
> requested you find the identity of Inmate Vasquez, who you claim
> to have witnessed the incident.  Officer Karlson reported you stated
> in a loud voice, "I don't know why she expect me to find out where
> he is, that's her job."  Inmate Edwards it is your responsibility to
> provide information regarding your allegations, including the
> names of any witnesses.
>
> Additionally, the three inmates you identified as witnesses were
> interviewed on January 18, 2006, by Appeals Coordinator Freese.
> The interviews did not provide any information that would
> substantiate your claims.

(Compl., Ex. E.)

Plaintiff expressed similar concerns regarding defendants' investigation in his

director's level appeal.  In this regard, plaintiff wrote:

> I am dissatisfied, you are shielding the truth.  But that is what you
> do.  You have failed to investigate any witness I presented, you fail
> to tell what C/O Whitfield said.  Anything that shows that on this
> day, Aug. 18, 2005, C/O Hook, Sgt. Kirkland and C/O Herrera
> acted willfully, maliciously, and racially conduct unbecoming a
> C/O.

(Compl., Ex. E.)  The director's level decision appears to have ignored plaintiff's claims about

defendants Freese, Young, and Shockley, as well as the lengthy discussion in response to those

set out in the second level appeal decision.  However, the fact that the director's level decision

did not address plaintiff's claim is no fault of plaintiff.  Plaintiff raised his claim as soon as it

materialized, and prison officials had at least two opportunities to address it.  Prison authorities

having been put on notice of plaintiff's claim and having addressed it at length, defendants

cannot now claim that plaintiff failed to exhaust it.

> To the extent that defendants are arguing plaintiff was required to re-start the

grievance process to exhaust his claim against defendants Freese, Young, and Shockley,

defendants are in error.  Neither the PLRA nor CDC procedures require that much from plaintiff,

and the court is prohibited from imposing such a requirement.  See Jones, 127 S. Ct. at 922-23.[3]

> The PLRA only requires exhaustion of "such remedies as are available."  Jones,

127 S. Ct. at 922 (quoting 42 U.S.C. § 1997(e)).  To satisfy the PLRA exhaustion requirement, a

prisoner must complete the administrative review process in accordance with the applicable

---

[3]  In Jones, two prisoners filed suits that were subsequently dismissed because they had
not identified each defendant in their administrative grievances.  127 S. Ct. at 922.  Rejecting the
"name-all-defendants" rule, the Court held that "exhaustion is not per se inadequate simply
because an individual later sued was not named in the grievances."  Id. at 923.  The Court
explained that nothing in the PLRA requires that the plaintiff name all of the defendants during
the grievance process.  Id. at 922.  The Court noted that the PLRA only requires exhaustion of
"such remedies as are available."  Id. at 922 (quoting 42 U.S.C. § 1997(e)).  In addition, the
Court explained that "Nothing in the MDOC [Michigan Department of Corrections] policy itself
supports the conclusion that the grievance process was improperly invoked simply because an
individual later named as a defendant was not named at the first step of the grievance process."
Id. at 922.  The Court observed that, at the time the prisoners had filed their grievances, the
Michigan Department of Corrections policy only told prisoners to "be as specific as possible."
Id. at 922.

1   procedural rules put in place by the prison.  <u>Jones</u>, 127 S. Ct. at 922-23.  As noted above,

2   California regulations state that prisoners may appeal "any departmental decision, action,

3   condition, or policy which they can demonstrate as having an adverse effect upon their welfare."

4   Cal. Code Regs. tit. 15, § 3084.1(a).  The language of the regulation is included in the first

5   sentence on the standard inmate appeal form:  "You may appeal any policy, action or decision

6   which has a significant adverse affect [sic] upon you."  The form merely instructs the prisoner to

7   "Describe Problem" and state the "Action Requested."  Nothing in regulations or instructions

8   suggests that a prisoner must re-start the grievance process when a new claim, arising out of the

9   same facts, materializes in the midst of the grievance process.  In fact, when the prisoner

10  proceeds to the second level of appeal, he is only instructed to explain why he is dissatisfied with

11  the response he received.  Similarly, at the third level, he is required to "add data or reasons for

12  requesting a Director's Level Review."  Given the circumstances set forth above, the court finds

13  that plaintiff properly exhausted his claim against defendants Freese, Young, and Shockley

14  before filing this action.

15          Defendants have the burden to raise and prove the affirmative defense of failure to

16  exhaust administrative remedies.  See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1117-19 &

17  nn.9 & 13.  Defendants Young, Freese, and Shockley have failed to carry their burden in this

18  instance.  Therefore, the defendants' motion to dismiss should be denied.

19          Accordingly, IT IS HEREBY RECOMMENDED that defendants Young, Freese,

20  and Shockley's January 3, 2007 motion to dismiss be denied.

21          These findings and recommendations are submitted to the United States District

22  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

23  days after being served with these findings and recommendations, any party may file written

24  objections with the court and serve a copy on all parties.  Such a document should be captioned

25  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

26  shall be served and filed within ten days after service of the objections.  The parties are advised

1   that failure to file objections within the specified time may waive the right to appeal the District

2   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3   DATED: June 15, 2007.

4

5   _____

6   DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

7   DAD:9
    edwa1595.57

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26